UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| EZMA SMITH, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 1:11-cv-0610-TAB-TWP |
| | ) | |
| ASSOCIATES IN BEHAVIORAL | ) | |
| COUNSELING, P.C. et al., | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.      Introduction**

This case arises from a business relationship gone bad.  In 2005, Plaintiff Ezma Smith began working for Defendant Associates in Behavioral Counseling, a mental health services firm in which Defendants Teresa Vannatta and Michele Boberg were partners.  Plaintiff worked over 40 hours a week, spending 72% to 80% of her time performing medical billing duties and the remainder of her time performing management-related duties.  The parties' business relationship began to breakdown as Plaintiff's unpaid overtime wages accumulated and promises of ownership went unfulfilled.  Plaintiff was terminated in May 2009 and brought this action against Defendants in May 2011 for violations of the Fair Labor Standards Act, Indiana's Common Wage Act, and for breach of contract.

While Defendants' motion for summary judgment raises numerous issues, the primary focus of this summary judgment battle is the applicability of the administrative exemption. Defendants identify numerous facts that could lead a reasonable jury to conclude that Plaintiff's primary duties were directly related to management and that she exercised discretion as to

matters of significance so that she was an exempt employee.  However, Plaintiff's deposition

testimony raises genuine issues of material fact as to the limitations on Plaintiff's management

duties and discretion.  Moreover, Plaintiff's affidavit asserts that she spent over 72% of her time

performing data entry duties associated with medical billing.  These facts are sufficient to raise

genuine issues of material fact, thereby precluding summary judgment on this issue.  As more

fully set forth below, Defendants' motion for summary judgment [Docket No. 42] is denied in

part and granted in part.

**II.      Discussion**

      **A.      Administrative exemption**

      Defendants contend that Plaintiff is administratively exempt from overtime wages.

Defendants bear the burden of establishing that Plaintiff is covered by an exemption.  *Schaefer-*

*LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 571 (7th Cir. 2012).  Exemptions are narrowly drawn

against employers, and "limited to those establishments plainly and unmistakably within their

terms and spirit."  *Id.* (internal quotation marks omitted).  For an employee to be employed in a

bona fide administrative capacity, that employee must be:

> (1) Compensated on a salary or fee basis at a rate of not less than $455 per week . . . .
> (2) Whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and
> (3) Whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.

*Id.* at 572 (citing 29 C.F.R. § 541.200(a)).  The parties do not dispute that prong one of the

exemption is satisfied and thus the Court focuses on prongs two and three.

2

2.      *Primary duties*

"The second prong of the test for the applicability of the administrative exemption requires that the qualifying employee's 'primary duty [be] the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers.'" *Schaefer-LaRose*, 679 F.3d at 573 (citing 29 C.F.R. § 541.200(a)(2)).  This prong can be broken down into two parts.  *See Kennedy v. Commw. Edison Co.*, 410 F.3d 365, 372 (7th Cir. 2005) (using a two-step approach).  The first step requires the Court to "ascertain whether the employee's work is office or nonmanual work." *Piscione v. Ernst & Young, LLP*, 171 F.3d 527, 538 (7th Cir. 1999).  The second step requires the Court to determine whether Plaintiff's duties primarily relate to the management or general business operations of Defendants.  *Id.*  Since neither party disputes that Plaintiff's duties consist of office and nonmanual work, the only inquiry is whether there is any meaningful dispute about whether Plaintiff's primary duties directly relate to Defendants' management policies or general business operations.

Generally, "[a]dministrative tasks constitute an employee's primary duty if the tasks represent 'the major part, or over 50 percent of the employee's time.'" *Kennedy*, 410 F.3d at 373 (citing 29 C.F.R. § 541.103).  While the percentage of time Plaintiff spent performing duties is an important consideration, time alone is not the sole test, and nothing in the regulations requires that exempt employees spend more than 50 percent of their time performing exempt work.  29 C.F.R. § 541.700(b); *Piscione*, 171 F.3d at 540–41.  The regulations provide further guidance:

(a) To qualify for the administrative exemption, an employee's primary duty must be the performance of work directly related to the management or general business operations of the employer or the employer's customers. The phrase "directly related to the management or general business operations" refers to the type of work performed by the employee. To

3

meet this requirement, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment.
(b) Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
(c) An employee may qualify for the administrative exemption if the employee's primary duty is the performance of work directly related to the management or general business operations of the employer's customers. Thus, for example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

*Schaefer-LaRose*, 679 F.3d at 573 (citing 29 C.F.R. § 541.201).

Defendants contend that Plaintiff's primary duties consisted of "administering and carrying out office work necessary to run her employer's business and [she] had a say in how the business was run." [Docket No. 43 at 16.] Plaintiff began her employment with Defendants in 2005 as an office manager and was promoted to director of operations sometime in 2007, a position she held until becoming billing administrator sometime in 2009. [Docket No. 44-3 at 60.] In 2007, Plaintiff began making banking deposits, signing checks, and paying bills. [*Id.* at 114; Docket No. 64-4 at 114.] Plaintiff was also given a business credit card to purchase office supplies. [Docket No. 44-3 at 102–04.] Additionally, Defendants assert that Plaintiff negotiated rates with insurance companies. [Docket No. 43 at 4–5.] Other duties included developing business policy and "overseeing all office management."

Plaintiff does not dispute that she performed these management-related duties, but her affidavit asserts that her primary duties were not directly related to management or business operations because she spent eight hours in a ten- to eleven-hour work day (72% to 80% of her

time) performing medical billing work.  [Docket No. 60-1 at 5.]  Defendants attempt to counter

Plaintiff's affidavit by citing cases where plaintiffs were administratively exempt despite the fact

that over 50% of their duties consisted of nonmanagement related work.  *See Gagnon v. Res.*

*Tech., Inc.*, 19 F. App'x 745, 748 (10th Cir. 2001) (unpublished) (following a bench trial, the

Tenth Circuit upheld a judgment in favor of defendant because "plaintiff's primary duty was to

administer and carry out the office work necessary to run defendant's business."); *Matthews v.*

*Bronger Masonry, Inc.*, 772 F. Supp. 2d 1004, 1013 (S.D. Ind. 2011) (following a bench trial, the

court held that plaintiff performed office work directly related to management and general

business operations despite spending 70% of her time bookkeeping (90% of which consisted of

data entry), 20% of her time preparing bid documents, and 10% of her time performing other

miscellaneous tasks).  However, unlike *Gagnon* and *Matthews*, this case is at the summary

judgment stage and Plaintiff has provided an affidavit and identified several parts of her

deposition upon which a reasonable jury could rely to conclude that her management duties were

limited and thus not her primary duties.

    For example, although Plaintiff was responsible for paying bills, she would only do so

after having "a collective meeting on what needed to be paid and when it needed to be paid, and

Michele was a part of that and so was Terrie Vannatta."  [Docket No. 44-3 at 114.]  Moreover,

Plaintiff's use of the business credit card was limited to purchasing basic office supplies at

Staples, such as paper, ink cartridges, and a shredder.  [*Id.* at 103.]  These purchases were based

on a list left on the front desk by Vannatta and Boberg, and the shredder was authorized by

Vannatta.  [Docket No. 60-1 at 5.]  Furthermore, Plaintiff rarely negotiated rates with insurance

companies.  Plaintiff testified that insurance companies have nonnegotiable rates and she could

only negotiate rates for the Employee Assistance Program.  [*Id.* at 126.]  Plaintiff testified that

the EAP negotiations were "very few and far between."  [*Id.*]

Plaintiff's deposition and affidavit also indicate that her role developing policy was

limited to penalties imposed on patients who missed appointments.  [*Id.* at 66; Docket No. 60-1

at 5.]  Moreover, Plaintiff testified that her duty of "overseeing all office management" was

limited to making sure employees stayed below their scheduled hours.  [Docket No. 44-3 at 114.]

While Plaintiff participated in hiring new employees, Boberg regularly conducted a second

interview and hiring decisions were subject to Vannatta's approval.  [Docket No. 60-1 at 5.]

Furthermore, beginning in late 2007 or early 2008, Kay Renoe served as the office manager.[1]

[Docket No. 60-4 at 70.]

While Defendants have identified a variety of facts that suggest Plaintiff's duties directly

relate to management and business operations, Plaintiff has raised several factual disputes.

When construing all reasonable inferences in favor of Plaintiff, and considering the limitations

on Plaintiff's management duties in conjunction with the fact that Plaintiff spent 72% to 80% of

her time on medical billing, there is a genuine issue of material fact as to whether Plaintiff's

primary duties directly related to management and business operations.  Accordingly,

Defendants' motion for summary judgment is denied as to Plaintiff's overtime claims.

*3.     Discretion*

The third prong also supports the Court's conclusion that summary judgment is not

appropriate for Plaintiff's overtime claims.  The third prong requires that Plaintiff's primary

---

[1]Plaintiff testified that her duties did not change after becoming director of operations, except she was engaged in some marketing.  [Docket No. 60-4 at 125.]  The record does not reflect Plaintiff's marketing duties.

duties include the "exercise of discretion and independent judgment with respect to matters of significance." *Schaefer-LaRose*, 679 F.3d at 577 (citing 29 C.F.R. § 541.200(a)(3)).  Some factors to consider in determining whether the employee exercises discretion over significant matters are:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* § 541.202(b).  Additionally, while the exercise of discretion and independent judgment "does not include clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work, an executive assistant or administrative assistant to a business owner or senior executive of a large business generally meets the duties requirements for the administrative exemption if such employee, without specific instructions or prescribed procedures, has been delegated authority regarding matters of significance." *Matthews*, 772 F. Supp. 2d at 1013 (citing 29 C.F.R. § 541.202(e); 29 C.F.R. § 541.203(d)).

Defendants contend that Plaintiff exercised discretion and independent judgment for matters of significance because Plaintiff was authorized to sign checks, make bank deposits, use a business credit card, develop policy, supervise and hire employees, negotiate insurance rates, and pay bills.  However, Plaintiff identifies several limitations associated with her discretion and

independent judgment, such as collaborating with Vannatta before paying bills, restricting the use of the business credit card to the purchase of basic office supplies on a list, and limiting negotiations to EAPs.  Furthermore, Plaintiff's deposition and affidavit indicate that policy development was limited to penalties imposed on patients who missed appointments.  [Docket No. 44-3 at 66; Docket No. 60-1 at 5.]  Moreover, Plaintiff's supervision of employees was limited: she merely made sure employees stayed below their scheduled hours and consulted with Boberg and Vannatta when hiring employees.  [Docket No. 44-3 at 114; Docket No. 60-4 at 70.]  Kay Renoe also began serving as the office manager in late 2007 or early 2008.

Considering that Plaintiff spent over 72% of her time performing medical billing duties that involved clerical-type work, and the numerous factual discrepancies regarding Plaintiff's discretion and independent judgment for significant matters, summary judgment is inappropriate.  Thus, the third prong serves as an additional basis to deny Defendants' motion for summary judgment on Plaintiff's overtime claims.

### B.      Statute of limitations

Defendants contend that the FLSA and ICWA claims are barred by the applicable statute of limitations.  [Docket No. 43 at 11.]  A cause of action for a FLSA violation:

> may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a).  Similarly, an ICWA claim must be brought within two years of the date of the act or omission.  Ind. Code § 34-11-2-1.  "Under both statutes, each pay period in which a violation occurs gives rise to a separate claim for relief."  *Anderson v. Ne. Otolaryngology, P.C.*, No. 106-CV-0037-DFH-TAB, 2006 WL 3487333, at *1 (S.D. Ind. Dec. 1, 2006).  This case was

filed on May 6, 2011.  [Docket No. 1.]  Therefore, the two-year deadline is May 6, 2009, and the three-year deadline for willful violations is May 6, 2008.

Plaintiff bears the burden of showing that Defendants' conduct was willful.  *Bankston v. Illinois*, 60 F.3d 1249, 1253 (7th Cir. 1995); *McDonald v. Vill. of Palatine*, No. 08-C-5435, 2012 WL 2590492, at *3 (N.D. Ill. June 29, 2012).  An employer acts willfully when he knows or acts with reckless disregard as to his obligations under FLSA.  *Bankston*, 60 F.3d at 1253; *McDonald*, 2012 WL 2590492, at *3.  It is the jury's province to determine whether the two-year or three-year limitations period applies.  *Bankston*, 60 F.3d at 1253.  Thus, at the summary judgment stage, Plaintiff only needs to identify evidence upon which a reasonable jury could rely to conclude that a willful violation occurred.  *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012); *Bankston*, 60 F.3d at 1253.

Plaintiff contends the FLSA violation was willful because Defendants made illusory promises to Plaintiff to avoid overtime payments.  Plaintiff asserts that Vannatta offered her a 20% share of partnership in ABC, P.C. and subsequently ABC Aspire, LLC, in which her ownership interest was to "override" any unpaid overtime wages.  [Docket No. 60-4 at 247–48.]  However, Plaintiff did not officially become a partner in either entity and was never compensated for overtime.  [Docket No. 60-5 at 31–33.]  Plaintiff argues that a reasonable jury could conclude that "Defendants used the illusory promise of ownership to persuade Ms. Smith to continue working many extra hours for their benefit without any intention of providing her compensation . . . ."  [Docket No. 59 at 6.]

Defendants contend that they did not act willfully because they consulted with an attorney regarding Plaintiff's status as an administratively exempt employee.  Defendants argue

that an employer "who consults with its attorney and examines relevant legal material is deemed to have acted reasonably, rather than recklessly, and in a good-faith manner in attempting to decide whether its plan would violate the Labor Act." [Docket No. 43 at 21 (citing *Halferty v. Pulse Drug Co.*, 826 F.2d 2, 3–4 (5th Cir. 1987).] Defendants' affidavit asserts that in early 2009 Boberg consulted with an attorney to determine whether "Smith was properly classified as a bona fide administrative employee exempt from overtime requirements of the FLSA." [Docket No. 44-1 at 2.] The attorney confirmed that Plaintiff fell within the exemption. [*Id.*]

Plaintiff attacks the validity of Boberg's affidavit on two grounds. Plaintiff claims that the affidavit is hearsay and that Defendants' reliance on the advice of counsel is not a complete defense because the advice was not obtained until early 2009. [Docket No. 59 at 8.] The Court disagrees with Plaintiff's hearsay objection. The affidavit is not being offered to prove the truth of the matter, but is offered to show that Defendants acted in good faith, based upon advice of counsel. *See Higdon v. Entenmann's Sales Co., Inc.*, No. 01-C-6972, 2002 WL 1285862, at *2 (N.D. Ill. June 11, 2002); 2 Kenneth S. Broun, McCormick on Evid. § 249 (6th ed. 2009) ("A statement that D made a statement to X is not subject to attack as hearsay when its purpose is to establish the state of mind thereby induced in X, such as receiving notice or having knowledge or motive, or to show the information which X had as bearing on . . . reasonableness [or] good faith . . . .").

However, Defendants' reliance on advice of counsel is problematic. Defendants did not seek advice of counsel until early 2009. Defendants do not assert any good faith basis for believing Plaintiff fell within the administrative exemption prior to seeking the advice of counsel in 2009. Therefore, a reasonable jury could conclude prior to 2009 that Defendants' promise of

partnership that "overrode" unpaid overtime wages was intended to avoid Defendants' overtime obligations. Accordingly, Defendants' motion for summary judgment is denied to the extent that Plaintiff may present evidence of willfulness at trial to potentially recover for FLSA violations that occurred between May 6, 2008, and the time in 2009 when Defendants sought advice of counsel.[2]

### C. Equitable estoppel

Relying on the doctrine of equitable estoppel, Plaintiff also seeks to recover unpaid overtime wages beyond the statute of limitations period. "Equitable estoppel prevents application of the statute of limitations bar when a party has induced another into forbearing suit within the applicable limitations period." *Bensman v. U.S. Forest Servs.*, 408 F.3d 945, 965 (7th Cir. 2005). Under this doctrine, there must be intentional and affirmative misconduct, such as hiding evidence and promising not to plead the statute of limitations. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 721 (7th Cir. 2004).

Defendants allegedly did not pay Plaintiff overtime because they claimed that ABC, P.C. needed to financially rebound. [Docket No. 64-4 at 169.] Defendants promised Plaintiff a partnership interest in exchange for "overriding" unpaid overtime wages. [*Id.* at 247–48.] Plaintiff never officially became a partner and contends that Defendants' actions constitute affirmative misconduct and caused her not to take legal action. Such actions normally are sufficient to support a finding of affirmative misconduct. *See Prange v. Boarders, Inc.*, No. 05-C-2194, 2006 WL 2632013, at *4 (N.D. Ill. Sept. 11, 2006) (assuring plaintiff that she would be

---

[2]Defendants assert that Plaintiff concedes that she is not entitled to overtime compensation after 2007. [Docket No. 43 at 11.] Plaintiff did not make such a concession. Plaintiff testified that she was not entitled to overtime after 2007 if she became a partner in ABC. [Docket No. 60-4 at 247–48.]

compensated "effectively misled plaintiff into believing she did not have to sue yet, because defendant would reimburse her for any unpaid wages."). However, equitable estoppel is not applicable in this case because Plaintiff had sufficient time after learning of the asserted misconduct to timely file suit.

"[U]nder the federal doctrine of equitable estoppel, once the obstacles strewn by the defendant to the plaintiff's suing have been cleared away; then [s]he must act quickly . . . ." *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 598–99 (7th Cir. 2001). Even after it became clear at a May 2009 meeting that Defendants would not pay Plaintiff unpaid overtime wages [Docket No. 44-3 at 73–74], Plaintiff waited until May 2011 to file suit. Moreover, Plaintiff could have pursued legal action before the May 2009 meeting. Plaintiff began working for Defendants in 2005 and was terminated in 2009. While Defendants may have affirmatively misled Plaintiff, it should have become apparent sometime during Plaintiff's four-year tenure and after many promises went unfulfilled that it was time to seek legal recourse. *See Redman v. U.S. West Bus. Res., Inc.*, 153 F.3d 691, 695 (8th Cir. 1998). Therefore, Defendants' motion for summary judgment is granted to the extent that Plaintiff may not seek unpaid overtime wages beyond May 6, 2009, or in the event that she establishes a willful violation, May 6, 2008.

### D.     Implied contract and unjust enrichment

Plaintiff concedes that Count II, breach of implied contract, and Count IV, unjust enrichment, are merely alternative theories to Plaintiff's FLSA claim. [Docket No. 59 at 4.] Plaintiff further concedes that the FLSA provides the exclusive remedy for unpaid overtime. [*Id.*] Accordingly, Defendants' motion for summary judgment is granted as to Counts II and IV.

### E.      Breach of express contract

*1.      Waiver*

Defendants argue that Plaintiff waived her express breach of contract claims.  [Docket No. 67 at 11.]  Waiver is the intentional relinquishment of a known right and can be express or implied from the acts, omission, or conduct.  *Novogroder Cos. v. Hartford Fire Ins. Co.*, No. 2:10-CV-193-RM, 2012 WL 3637602, at *10 (N.D. Ind. Aug. 21, 2012); *Westfield Nat'l Ins. Co. v. Nakoa*, 963 N.E.2d 1126, 1132 (Ind. Ct. App. 2012).  "The party claiming an implied waiver has the burden of proving a clear, unequivocal, and decisive act of its opponent manifesting an intention to waive its rights."  *Westfield*, 963 N.E.2d at 1132.  "While the existence of facts necessary to constitute a waiver of a contract provision is ordinarily a question of fact . . . the question of the facts necessary to constitute a waiver is a matter of law."  *Jackson v. DeFabis*, 553 N.E.2d 1212, 1217 (Ind. Ct. App. 1990).

Defendants identify deposition testimony where Plaintiff states she "got rid" of her ownership interests.  [Docket No. 64-4 at 74.]  The second amended complaint also alleges that in August 2009, "Plaintiff told the other partners of ABC, PC and ABC Aspire LLC that she no longer wanted to be a shareholder in the Companies."  [Docket No. 27 at 4, ¶ 13.]  However, the complaint also asserts that relinquishing her right of ownership was premised on her continuing to work as an hourly employee doing medical billing and receiving compensation for overtime and vacation owed to her.  [Docket No. 27 at 4, ¶ 14.]  Plaintiff also testified that she attempted to reach a solution with Vannatta about overtime and vacation compensation, which led her to relinquish her ownership interest, implying that waiver was conditional.  [Docket No. 64-4 at 74.]

Because the relinquishment of Plaintiff's ownership rights were premised upon compensation for any overtime wages and vacation time owed to her, the waiver was conditional.  As discussed, there are numerous factual disputes as to what, if any, overtime and vacation was owed to Plaintiff.  Depending on how Plaintiff's overtime claim plays out at trial, it will affect whether the condition to relinquishment of ownership was satisfied.  Therefore, a finding of waiver is not appropriate at this stage.

     *2.*     *Statute of limitations*

Defendants also argue that Plaintiff's breach of contract claim is barred because the ownership agreement is an employment contract, subject to a two-year statute of limitations. [Docket No. 43 at 26.]  Plaintiff argues that ownership and employment contracts are distinguishable.  [Docket No. 59 at 13.]  The Court agrees.

Indiana Code § 34-11-2-1 limits employment contracts to agreements that address "the terms, conditions, and privileges of employment," such as "hiring or the failure to hire, suspension, discharge, discipline, promotion, demotion, retirement, wages, or salary."  In contrast, a shareholder is a "person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted pursuant to a recognition procedure or a disclosure procedure established under IC 23-1-30-4."  Ind. Code § 23-1-20-24.  These provisions demonstrate the distinction between employment and ownership contracts.  *See also Vohland v. Sweet*, 433 N.E.2d 860, 863 (Ind. Ct. App. 1982) (discussing the distinction between employment and ownership contracts).

Because the purported agreement did not discuss the terms or conditions of Plaintiff's employment, but granted Plaintiff 20% ownership in ABC, P.C. and subsequently 20%

14

ownership in ABC Aspire, LLC, an employment contract was not formed.  Accordingly, the two-

year statute of limitations for employment contracts does not apply.

   3.   *ABC, P.C.*

   Defendants also argue that Plaintiff's breach of contract claim fails as a matter of law

because Plaintiff is ineligible to hold shares in ABC, P.C. and therefore her claim is barred by

the doctrine of impossibility.  [Docket No. 43 at 24.]  ABC, P.C. is a professional corporation.

Under Indiana law, "a professional corporation may issue shares, fractional shares, and rights or

options to purchase shares only to:

> (1) individuals who are authorized by Indiana law or the laws of another state to render a
> professional service permitted by the articles of incorporation of the corporation;
> (2) general partnerships in which all the partners are authorized by Indiana law or the laws
> of another state to render a professional service permitted by the articles of incorporation of
> the corporation;
> (3) professional corporations authorized by Indiana law or the laws of another state to render
> a professional service permitted by the articles of incorporation of the corporation; and
> (4) the trustee of a qualified trust.

Ind. Code § 23-1.5-3-1(a).  Consequently, Plaintiff does not fall within any of the categories of

persons eligible to receive shares in a professional corporation.

   Plaintiff does not dispute that she is ineligible to receive shares in a professional

corporation.  [Docket No. 59 at 13–14.]  Instead, she argues that a contract in violation of a state

law should not be invalidated "unless the language of the implicated statute was clear and

unambiguous that the legislature intended that the courts not be available for either party to

enforce a bargain made in violation thereof."  [Docket No. 59 at 14 (citing *Continental

Basketball Ass'n v. Ellenstein Enterprises, Inc.*, 669 N.E.2d 134, 140 (Ind. 1996)).]  In

*Continental Basketball*, the Indiana Supreme Court concluded that "the legislature's failure to

use words like 'void' or 'unenforceable' in the statute and its inclusion of remedial provisions to

be invoked in the event of violations, that the legislature did not intend that every contract made in violation of the Franchise Acts be void." 669 N.E.2d at 140–41. However, the same cannot be said about shareholder agreements for professional corporations. Indiana Code § 23-1.5-3-1(b) provides that:

> All shares issued in violation of:
> (1) this section; or
> (2) any rule adopted by a licensing authority as provided by this section;
> are void.

Thus, unlike *Continental Basketball*, Indiana Code § 23-1.5-3-1(b) unambiguously voids the agreement.

Plaintiff further asserts that the agreement should be enforced because "Defendants' actions were wrongful in that they offered Ms. Smith an advantage that was illegal under Indiana's Profession Corporation Statute." [Docket No. 59 at 13–14 (citing *Wabash R. Co. v. Kelly*, 153 Ind. 119 (1898), and *Wright v. Hughes*, 119 Ind. 324 (1889)).] While *Wabash* and *Kelly* support the general proposition that a contracting party should not be permitted to benefit from its misconduct, these cases do not hold that a mere promise of a right or benefit not permitted by law is misconduct. Plaintiff does not contend that Defendants entered into this agreement knowing that the promise was unenforceable. [*See* Docket No. 27 at 6–7; Docket No. 59 at 13–14.] And Vannatta's deposition reflects that she was ignorant of the law until she later sought legal advice. [Docket No. 60-5 at 31–32.] Mere ignorance of the law is not misconduct, and even if it was misconduct, Vannatta and Plaintiff are equally culpable. Accordingly, Defendants' motion for summary judgment is granted as to Plaintiff's breach of contract claim

for ownership in ABC, P.C. [3]

4. *ABC, LLC*

Defendants argue that Plaintiff's relationship with ABC Aspire, LLC has no bearing on her breach of contract claim and is "an apparent attempt to 'muddy the water.'" [Docket No. 67 at 8.]  The Court disagrees.

Plaintiff claims that she was promised partnership in ABC Aspire, LLC after Vannatta consulted with an attorney and discovered that Plaintiff was ineligible for partnership in the corporate entity.  [Docket No. 27 at 6; Docket No. 59 at 14.]  Vannatta testified that after she discovered Plaintiff could not be a shareholder in ABC, P.C., she went to her attorney to make the partnership with Plaintiff work.  [Docket No. 60-5 at 30.]  Plaintiff testified that Vannatta made the partnership work by agreeing to make Plaintiff a 20% partner in ABC Aspire, LLC and funneling profits from ABC, P.C. to ABC Aspire, LLC to be paid out to the owners so that nonprofessionals could receive their allotted profits.  [Docket No. 44-3 at 248; Docket No. 60-5 at 31–33.]  While Vannatta and Boberg testified that the LLC "never got off the ground," Boberg testified that the LLC filed papers with the Indiana Secretary of State and filed federal income taxes.  [Docket No. 66-6 at 37–38.]

This testimony is sufficient to raise a genuine issue of material fact as to whether Defendants promised Plaintiff a 20% ownership in the LLC and whether profits from ABC, P.C. were supposed to be funneled through the LLC so that Plaintiff could share in the profits. Therefore, summary judgment is inappropriate as to Plaintiff's breach of contract claim for ABC Aspire, LLC.

---

[3]In light of the Court's conclusion, the Court need not address Defendants' impossibility argument.  [*See* Docket No. 43 at 24.]

**F.     Personal liability**

*1.     FLSA*

Plaintiff seeks to hold Vannatta and Boberg personally liability under FLSA.  [Docket No. 27; Docket No. 59 at 16.]  Defendants do not dispute that a corporate officer can be held personally liable for violations of FLSA [Docket No. 67 at 12], but argue that Plaintiff waived this claim because it was not alleged in the complaint.  [Docket No. 27 at 5.]

The second amended complaint is sufficient to put Defendants on notice that Plaintiff is seeking to hold Vannatta individually liable under FLSA.  Some of the relevant allegations from the complaint include:

> !     Plaintiff was hired as the office manager by Dr. Teresa Vannatta the sole owner of ABC, PC.  [Docket No. 27 at 2, ¶ 5.]
> !     Doctors Vannatta, Boberg and Mueller were partners and officers in the ABC, P.C. [Docket No. 27 at 3, ¶ 9.]
> !     Dr. Vannatta ensured Plaintiff that she would still receive her vacation time in the future. [Docket No. 27 at 2, ¶ 7.]
> !     Dr. Vannatta held the overtime and vacation pay owed to Plaintiff as leverage in her sexual harassment of Plaintiff.  [Docket No. 27 at 3, ¶ 11.]
> !     Dr. Vannatta back peddled on her earlier promises that Plaintiff would receive her vacation and overtime from the time that Plaintiff was given shares in the Companies.  [Docket No. 27 at 3, ¶ 15.]
> !     Defendants Vannatta and Boberg are personally liable for Plaintiff's unpaid wages by failing to maintain proper and legal corporate formalities.  [Docket No. 27 at 5, ¶ 24.]

Because the allegations identify Vannatta as an officer and supervising employer who denied Plaintiff overtime wages, Plaintiff did not waive her personal liability claim against Vannatta for FLSA violations.[4]  *See Arteaga v. Lynch*, No. 10-C-1444, 2012 WL 3879899, at *11 (N.D. Ill. Sept. 26, 2012 ) (explaining that an "employer" under the FLSA may be

---

[4]Although the complaint alleges that Defendants are personally liable for failure to follow corporate formalities, Plaintiff is permitted to plead alternative theories. Fed. R. Civ. P. 8(a)(3).

individually liable provided the defendant employee had "supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation."); *Shakib v. Back Bay Rest. Grp., Inc.*, No. 10-CV-4564-DMC-JAD, 2011 WL 4594654, at *4 (D.N.J. Sept. 20, 2011) ("Because Plaintiff has sufficiently shown that Defendants may be considered employers, and has alleged that both Defendants played a role in denying him wages as guaranteed by the FLSA . . . the Court holds that Plaintiff has stated a prima facie cause of action under the FLSA . . . against Defendants."); *Austin v. Cook Cnty.*, No. 07-C-3184, 2009 WL 799488, at *3 (N.D. Ill. Mar. 25, 2009) ("Under the FLSA, a person is considered an "employer" and subject to individual liability if two conditions are met: (1) the individual had supervisory authority over the plaintiff; and (2) the individual was at least partly responsible for the alleged violation.").

While Boberg may qualify as an "employer" because she was a partner and officer, the complaint does not allege that she supervised Plaintiff or played a role in denying Plaintiff overtime wages or vacation time.  This is further supported by Plaintiff's deposition, where she testified that Boberg instructed Vannatta and her to get together to discuss the overtime dispute since they were the only ones that knew about their overtime agreement.  [Docket No. 60-4 at 12.]  Although the complaint seeks to hold Boberg personally liable for failure to follow corporate formalities, Plaintiff does not contend that Boberg was responsible in whole or in part for the alleged overtime violation.  *See Arteaga*, 2012 WL 3879899, at *11; *Shakib*, 2011 WL 4594654, at *4; *Austin*, 2009 WL 799488, at *3.  Consequently, the individual liability claim against Boberg for FLSA violations is waived, and in any event, not supported by the record.  Accordingly, Defendants' motion for summary judgment is granted to the extent that Boberg

may not be personally liable under FLSA.

      *2.     State claims*

      Plaintiff also seeks to hold Vannatta and Boberg personally liable for failure to maintain corporate formalities.  [Docket No. 27 at 4.]  Courts usually consider an entity's failure to follow corporate formalities when "the corporate veil" doctrine is implicated, which occurs when the corporate form is used as a cloak or cover for fraud, illegality, or if necessary to prevent unfairness to innocent third parties.  *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012); *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996).  "The burden of proof falls on the party seeking to pierce the corporate veil to establish that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice."  *Nat'l Soffit*, 98 F.3d at 265.

      Plaintiff seeks to hold Vannatta and Boberg personally liable because corporate formalities were not maintained.  However, even if Defendants failed to follow certain corporate formalities, Plaintiff does not claim or argue that the corporate form was manipulated to avoid ICWA obligations or to somehow prevent Plaintiff from obtaining a 20% share in the ABC entities.  [*See* Docket No. 59 at 17–18.]  Rather than explaining why the corporate veil doctrine is implicated, Plaintiff's analysis jumps straight to addressing whether certain formalities were followed.  Plaintiff therefore fails to satisfy her burden.  *See Nat'l Soffit*, 98 F.3d at 265. Defendants' motion for summary judgment is granted to the extent that Plaintiff may only seek to hold Vannatta personally liable under FLSA.

III.     **Conclusion**

Defendants' motion for summary judgment [Docket No. 42] is granted as to Counts II

and IV and denied as to Counts I and III.  Plaintiff has presented sufficient evidence to raise a

genuine issue of material fact with respect to the applicability of the administrative exemption.

Plaintiff has also presented sufficient evidence upon which a reasonable jury could find that

Defendants acted willfully, thereby leaving open the possibility that the three-year statute of

limitations applies.  However, the doctrine of equitable estoppel is inapplicable and Plaintiff may

not seek unpaid overtime wages beyond May 6, 2009, or in the event that she establishes a

willful violation, May 6, 2008.  Plaintiff may only seek to hold Vannatta personally liable under

FLSA, not Boberg

Additionally, the breach of contract claim for ABC, P.C. also fails as a matter of law.

However, there are genuine issues of material fact related to Plaintiff's ownership agreement

with ABC Aspire, LLC.  As a result, waiver of the breach of contract claim is not appropriate at

this stage, and should be addressed at trial, which remains set for **9:30 a.m. on November 13,**

**2012**, in Room 238, United States Courthouse, 46 E. Ohio Street, Indianapolis, Indiana.

Dated:   10/19/2012

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

21

Copies to:

Gregory P. Bowes
BOWES & ASSOCIATES, P.C.
greg@gregbowes.com

Jason R. Delk
DELK MCNALLY
delk@delkmcnally.com

Daniel J. Gibson
DELK MCNALLY
gibson@delkmcnally.com